# CHARLESTON.

## Ex Parte George Pratt.

Submitted October 15, 1918.    Decided October 29, 1918.

1. COMMERCE—*Intoxicating Liquors—Webb-Kenyon Act—Validity—State Law.*
    The Federal statute known as the Webb-Kenyon Act, is valid and does not restrain, limit or nullify sec. 31 of ch. 32A of the Code of this state. (p. 52).

2. SAME—*State Law—Effect of Federal Law.*
    There is no legal repugnancy or inconsistency between said sec. 31, ch. 32A, Code, and the Federal statute known as the Reed Bone-Dry Law, wherefore the former is not superseded, suspended nor abrogated by the latter. (p. 53).

3. CRIMINAL LAW—*State and Federal Law—Separate Offense.*
    An act forbidden by a Federal statute, and a state statute each designed to establish and enforce the same general principle of public policy may constitute two offenses, one against the Federal government and another against the state. (p. 53).

Error to Circuit Court, Jefferson County.

Habeas corpus by George Pratt against W. H. Allder. Judgment for plaintiff, and defendant brings error.

*Reversed, and petitioner remanded to custody.*

83 W. Va.

*Jno. T. Simms,* for plaintiff in error.
*F. J. Beckwith,* for defendant in error.

POFFENBARGER, PRESIDENT:

On the following agreed statement of facts, Geo. Pratt, convicted of a violation of sec. 31 of ch. 32A of the Code, was discharged by the trial court, on a writ of *habeas corpus:*

"The petitioner arrested by Shipley Constable, in Jefferson County West Virginia, when riding in an automobile with Joe Poggie, chauffeur and owner of the automobile, and accompanied by two other persons who with him had hired the automobile from the owner. The constable had a warrant in his possession issued by Justice Miller of Shepherdstown District in said County of search and seizure form for the arrest of Joe Poggie the chauffeur and owner, charging said Poggie with the illicit storing of intoxicating liquors, and by virtue of said warrant said Constable stopped the machine in which the above parties were riding, he found in the machine eight quarts of whiskey and some beer. The petitioner claimed three quarts of this whiskey which had been brought from the State of Maryland into the State of West Virginia whereupon the Constable arrested all the parties in the machine and took them before Justice Miller and made the complaint before the Justice against petitioner and his two companions, charging them with bringing into the State of West Virginia and County of Jefferson more than one quart of liquor in thirty consecutive days, whereupon the petitioner plead guilty to said complaint and a sentence of two months imprisonment and a fine of $100.00 was imposed. Petitioner was arrested on March 15th, 1918 and is still in *conefinement* working on the road for the payment of his fine."

On the writ of error to the judgment, the sole questions argued are the validity of the Federal statute, known as the Webb-Kenyon Law, and the scope and effect of that act and another Federal statute known as the Reed Amendment to a Post Office Appropriation Act, sometimes called the Reed Bone-Dry Law.

The decisions in *James Clark Distilling Co.* v. *Western*

*Maryland Railway Co.,* 242 U. S. 311, and *State* v. *Davis,* 77 W. Va. 271, render the constitutionality of the Webb-Kenyon Law no longer debatable in this court, and it would be a waste of time to discuss it.

That law neither enforces prohibition upon the states nor restrains or limits the prohibition laws of the states, within the limits of state power permitted by it. Sec. 31 of ch. 32A of the Code operates clearly within such limits. It merely prohibits the bringing of liquors into the state in quantities exceeding a prescribed limit, within a prescribed period of time, for use within the state. It does not affect commerce in liquors between other states, in any sense or degree.

As there is no conflict between this statute and the so-called ''Reed Bone-Dry Law,'' that law does not supersede it. They may operate together consistently, since they have a common purpose in general. They enforce the same policy, restraint of the liquor traffic and incidental regulation or limitation of the use of intoxicating liquors. The Webb-Kenyon Law measureably deprives such liquors of their interstate character as articles of commerce, to the end that the states may deal with them more effectually. The other Fedearl Statute either supplements state legislation enforcing state policy, or adopts the same policy as a national one and enforces it. Hence, there can be no conflict between it and the state law. Under such circumstances, the Federal law neither supersedes nor nullifies the state law. ''The recognition by the acts of Congress of the power and right of the States to tax, control, or regulate any business carried on within its limits, is entirely consistent with the intention on the part of Congress to tax such business.'' *License Tax Cases,* 5 Wall. (U. S.) 462, 475. ''The two lines of legislation proceed in the same direction and tend to the same result.'' *Id.* 473. The act in question discloses on its face congressional intent to enforce, not obliterate, state policy, for it in terms refers to the prohibition laws and policy of states. This reference clearly negatives any possible implication of intent to supersede such laws. The same act may be made an offense against the Federal government and an offense against the state. *Jett* v. *Com.,* 18 Gratt. 955; *State* v. *Coss,* 12 Wash.

673; *United States* v. *Lackey,* 99 Fed. Rep. 952; 12 Cyc. 205.

The validity and operation of the statute on which the judgment stands are not assailed on any other ground and the agreed facts clearly constitute an offense under it.

. Under these conclusions, the judgment is manifestly erroneous and must be reversed.

*Reversed, and petitioner remanded to custody.*