# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 68629-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| ALFRED J. KIEFER, JR. | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: August 5, 2013 |

SPEARMAN, A.C.J. — Alfred Kiefer appeals his conviction for misdemeanor harassment, claiming (1) he was convicted of misdemeanor harassment as an uncharged offense; (2) the evidence was insufficient to prove misdemeanor harassment; and (3) his right to jury unanimity was violated because there was not substantial evidence to prove every alternative means of committing misdemeanor harassment. We reject Kiefer's sufficiency of the evidence challenge but agree with both parties that the conviction must be reversed because the trial court erred in instructing the jury on two uncharged alternative means. We do not reach the third issue given our disposition of this appeal. Accordingly, we reverse Kiefer's misdemeanor harassment conviction.

## FACTS

On January 22, 2012, Laura Rawes and Alfred Kiefer were at their shared residence when Kiefer accused Rawes of taking his truck and they began arguing. Kiefer pulled Rawes' hair and punched her in the back of the neck. He also threw a beer on her and spit in her face. Kiefer then announced that he was

leaving the house and taking the couple's dogs with him because Rawes was scaring them with her yelling. Kiefer took the dogs for a two-hour walk. While Kiefer was gone, Rawes took a shower, got dressed, and sent text messages to her friend Priscilla. In one message, she stated, "Alfred hit me and he is going to kill me." Report of Proceedings (RP) at 143. She also texted that Kiefer was going to kill her because she was going to put him in jail for beating her.

While he was gone, Kiefer sent Rawes a text message stating, "I have a question. What have you ever got a job and earned — what did you ever have to show for what you have owned or owe. Take free money away from you. What have you got." RP at 147. Rawes testified that when she saw this text, she knew he was going to take her Social Security Insurance money from her.

When Kiefer returned, Rawes was watching a movie. Kiefer accused her of cheating on him. He said he did not believe she had a seizure disorder and used an application on his cell phone to flash a "strobe light," in Rawes' face. Rawes hid her eyes while he flashed the strobe light at her for five or ten minutes. Kiefer then picked up Rawes' computer and smashed it on the floor. He said to Rawes that he would kill her if she called the cops on him. Rawes then ran out of the house and called 911. In the recorded 911 call, which was admitted at trial, Rawes stated that Kiefer had hit her all day, threatened to kill her, and broke her computer. State's Exhibit 1. A Whatcom County sheriff's deputy arrived at the couple's residence. According to the deputy, Rawes was crying and "hysterical." RP at 219-20. Rawes told the deputy that Kiefer had repeatedly hit her throughout the day.

2

Kiefer was charged with felony harassment and assault in the fourth degree. The charges went to trial. At trial, Rawes testified that she and Kiefer had been in a relationship for six years. She testified that he had threatened to kill her "a lot," and that he threatened to kill her on January 22. She testified that she was afraid that he would follow through with his threat. She also testified that Kiefer had hit her in the past. Rawes admitted that during their relationship, she had assaulted Kiefer, had been convicted of damaging his property, and had been convicted of violating court orders prohibiting contact with Kiefer.

The day after the State rested its case, the prosecutor asked that the jury be instructed on a charge of misdemeanor harassment as a lesser included offense within the charged count of felony harassment (threat to kill). Over Kiefer's objections, the trial court granted the request. The jury was instructed that, if it was not satisfied beyond a reasonable doubt that Kiefer was guilty of felony harassment, it was to consider whether he was guilty of misdemeanor harassment. The jury instructions on misdemeanor harassment included three of the four statutory alternative means of committing misdemeanor harassment, stating that Kiefer committed that crime if on January 22, 2012 he knowingly threatened:

(a) To cause bodily injury immediately or in the future to Laura Rawes, or
(b) To cause physical damage to the property of Laura Rawes, or
(c) Maliciously to do any act which was intended to substantially harm Laura Rawes with respect to her physical health or safety.[1]

---

[1] The to-convict instructions for misdemeanor harassment also required the jury to find that "the words or conduct of the defendant placed Laura Rawes in reasonable fear that the threat would be carried out"; that "the defendant acted without lawful authority"; and that "the threat was made or received in the State of Washington." CP at 35.

3

Clerk's Papers (CP) at 35; RCW 9A.46.020(1).

The jury found Kiefer guilty of assault in the fourth degree, not guilty of felony harassment, and guilty, by general verdict, of misdemeanor harassment. Kiefer appeals.

## DISCUSSION

### Jury Instructions on Uncharged Alternative Means

Kiefer first claims his conviction for misdemeanor harassment must be reversed because the jury was erroneously instructed on two uncharged alternative means of misdemeanor harassment as a lesser included offense to felony harassment. The State concedes error on this issue. The concession is well taken.

Instructing the jury on an uncharged crime violates the defendant's right to notice of the crime charged. State v. Doogan, 82 Wn. App. 185, 188, 917 P.2d 155 (1996). A lesser offense is included within a charged offense, however, when each of the elements of the lesser offense are necessary elements of the charged offense and the evidence in the case supports an inference that only the lesser crime was committed. State v. Gamble, 154 Wn.2d 457, 463, 114 P.3d 646 (2005). When limited to an allegation of a threat to cause bodily injury under RCW 9A.46.020(1)(a)(i), misdemeanor harassment is a lesser included offense within felony harassment charged as a threat to kill. State v. C.G., 150 Wn.2d 604, 611, 80 P.3d 594 (2003).

The jury instructions here, however, were not limited to the alternative means involving a threat to cause bodily injury. They also instructed the jury on

4

two additional alternative means: (1) threat to cause physical damage to another person's property and (2) threat to maliciously do any act intended to substantially harm another person's health or safety. RCW 9A.46.020(1)(a)(ii), (iv). Both of these alternatives contain elements not necessary for felony harassment and fail the legal prong of the lesser included offense test.

The State properly conceded that instructing the jury on these alternatives was prejudicial error requiring reversal because on this record it is possible the jury convicted the defendant based on one or both of the uncharged alternatives. Doogan, 82 Wn. App. at 189-90 (citing State v. Bray, 52 Wn. App. 30, 34, 756 P.2d 1332 (1988); State v. Severns, 13 Wn.2d 542, 549, 125 P.2d 659 (1942)).

## Sufficiency of the Evidence

Kiefer also argues that his misdemeanor harassment conviction must be vacated and dismissed with prejudice for insufficiency of the evidence. This issue involves the lesser included alternative means involving a threat to cause bodily injury. On a sufficiency of the evidence challenge, we determine whether, after viewing the evidence and all inferences that can reasonably be drawn from the evidence in the light most favorable to the State, any rational trier of fact could find the essential elements of the charged crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992); State v. Delmarter, 94 Wn.2d 634, 618 P.2d 99 (1980).

A defendant is guilty of misdemeanor harassment if, without lawful authority, he or she knowingly threatens to cause bodily injury immediately or in the future to the person threatened or to any other person and by words or conduct places the person threatened in reasonable fear that the threat will be

carried out. RCW 9A.46.020(1). A threat is a direct or indirect communication of the intent to do the act threatened. See RCW 9A.04.110(28).[2]

Kiefer argues that because the only evidence of a communicated threat was a threat to kill Rawes and the jury found him not guilty of felony harassment, the evidence was insufficient to prove misdemeanor harassment. The State disagrees, citing C.G., 150 Wn.2d 604. In C.G., our supreme court reversed a juvenile's conviction for felony harassment where the evidence showed that she threatened to kill the vice-principal but his testimony established only that the threat caused him to believe she might try to harm him or someone else. Id. at 606-07. The court held that to convict a defendant of felony harassment, the State must prove that the victim is placed in reasonable fear that the threat to kill will be carried out. Id. at 610. The court then observed,

> [T]he State will still be able to charge one who threatens to kill with threatening to inflict bodily injury, in the nature of a lesser included offense, thus enabling a misdemeanor charge even if the person threatened was not placed in reasonable fear that the threat to kill would be carried out, but was placed in fear of bodily injury.

Id. at 611. Based on this statement, we reject Kiefer's argument.

We conclude that the evidence in this case would have permitted the jury to find beyond a reasonable doubt that while Kiefer threatened to kill Rawes, Rawes was not placed in reasonable fear that the threat to kill would be carried out and that she feared only bodily injury. This is a reasonable inference from the evidence, given that Rawes did not leave the couple's residence when Kiefer left

---

[2] Furthermore, under the First Amendment, the harassment statute proscribes only "true threats." State v. Kilburn, 151 Wn.2d 36, 41, 84 P.3d 1215 (2004). A true threat is "a statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm upon or to take the life of another person." Id. at 43 (internal quotation marks and citation omitted). Whether Kiefer's statement constituted a "true threat" is not at issue.

and given Kiefer's past history of threatening to kill her and not carrying out his threats, as well as his past history of assaulting her. The evidence was sufficient to allow a reasonable jury to find that Kiefer committed misdemeanor harassment.[3]

Based on the submission to the jury of the two uncharged alternative means that were not lesser included offenses, we reverse Kiefer's conviction for misdemeanor harassment.[4]

Reversed.

WE CONCUR:

---

[3] We have no occasion to express an opinion on whether the giving of the lesser included instruction in the first place was proper and we do not do so here.

[4] We do not reach Kiefer's claim that his right to jury unanimity was violated because there was not substantial evidence on each alternative means of committing misdemeanor harassment. He cites, among other cases, State v. Kitchen, 110 Wn.2d 403, 756 P.2d 105 (1988). The remedy for such a claim, based on the failure to ensure a unanimous jury verdict, is to reverse and remand for a new trial. See Kitchen, 110 Wn.2d at 405-06, 414. Because we are reversing and remanding Kiefer's harassment conviction on another ground, we do not address this issue.